# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO. 3:18 CR 178 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **CHARLES BRIAN O'NEILL,** | **MEMORANDUM OPINION AND** |
| Defendant. | **ORDER** |

## INTRODUCTION

Currently pending before the Court is Defendant Charles B. O'Neill's Motion to Vacate his guilty plea, conviction, and sentence pursuant to 28 U.S.C. § 2255. (Doc. 176). The Government opposed (Doc. 179), and O'Neill replied (Doc. 181). O'Neill subsequently filed a Motion for Final Disposition. (Doc. 182). For the foregoing reasons, the Court grants in part Defendant's Motion to Vacate.

## BACKGROUND

On April 11, 2018, a grand jury indicted Defendant for violations of 18 U.S.C. § 2251(a) (Sexual Exploitation of a Minor (production)) (Count 1) and 18 U.S.C. § 2252(a)(2) (Receipt and Distribution of Child Pornography) (Count 2). (Doc. 8, at 1–2). The district court later severed the two Counts. (September 18, 2020, Docket Entry). Defendant filed multiple motions to suppress, only two of which are relevant to his present Motion to Vacate. The first sought to suppress evidence found in Defendant's residence and on his person, which primarily included child pornography and child erotica located on his cell phone. Law enforcement obtained this evidence through the execution of a search warrant (the "residence warrant") supported by the affidavit of

1

Fostoria Police Officer Cory Brian. *See* Doc. 44. The second motion to suppress targeted evidence, including recording equipment, a desktop computer, numerous pieces of sexual paraphernalia, children's clothing, costumes, and prescription sedatives, collected from a barn owned by Defendant. (Doc. 68-1, at 4). Law enforcement obtained this evidence after executing a search warrant (the "barn warrant") supported by the affidavit of Sergeant Ginnie Barta of the Wood County Sheriff's Office. *See* Doc. 63.

Each motion to suppress similarly argued each affidavit supporting its respective warrant was (1) insufficient to establish probable cause for a search and (2) based on allegedly false statements offered by Officer Brian and Sergeant Barta. (Doc. 44, at 2–7; Doc. 63, at 6–11). On Defendant's account, these legal deficiencies rendered the evidence resulting therefrom subject to suppression. The district court[1] denied both motions for identical reasons. *See* Docs. 78, 79. First, the court found Officer Brian did not knowingly or recklessly include false statements of material fact in his affidavit. (Doc. 78, at 3–5 (applying the factors from *Franks v. Delaware*, 438 U.S. 154, 155–156 (1978))). Second, the court found the residence warrant, as supported by Officer Brian's affidavit, and the subsequent search of Defendant's home and person fell within the good faith exception to the Fourth Amendment's remedial exclusionary rule despite wanting for probable cause. *Id.* at 7–11. The court repeated these findings with respect to Sergeant Barta's affidavit, the barn warrant, and the subsequent search of Defendant's barn, and "incorporate[d] . . . by cross-reference all applicable and pertinent portions of the residential search warrant order" into its ruling on the barn search. (Doc. 79, at 2).

---

1. This case was originally assigned to Senior United States District Judge James G. Carr, who penned the two rulings on the relevant motions to suppress. On April 7, 2021, the case was reassigned to the undersigned.

After denial of his motions to suppress, Defendant entered into a conditional plea agreement with respect to Count 1 (the production Count) of the indictment. (Doc. 138). The agreement was conditional on preservation of Defendant's "right to appeal the denial of his motion to suppress ([D]oc. 63), which ruling ([D]oc. 79) incorporates by reference certain findings and orders set forth in other rulings made in this case which Defendant intends to appeal to the extent said rulings were relied upon in the ruling denying the aforementioned motion." *Id.* at 5–6. Again, the only final ruling of the district court explicitly mentioned in this first plea agreement, as distinguished from any reasoning employed to reach such ruling, is the ruling as to the <u>barn</u> warrant. *See* Doc. 79. This first plea agreement did not expressly preserve Defendant's ability to appeal the final ruling of the district court with respect to the legality of the <u>residence</u> warrant and search.

Over eight months after reaching the first plea agreement, the Parties entered into a second plea agreement with respect to the sole remaining count in the indictment—Count 2 (the receipt Count). (Doc. 150). This second agreement contained conditional guilty plea language identical to that of the prior agreement, with the exception of a hand-written substitution of "Count One" for "Count Two." *Compare* Doc. 138, at 4-5, *with* Doc. 150, at 4. On September 9, 2022, the Court sentenced Defendant on both severed Counts according to the agreed upon guideline range in each plea agreement. *See* Docs. 155, 164. The Court imposed a sentence of 192 months on Count 1 and 192 months on Count 2, to be served concurrently. (Doc. 155, at 2).

Defendant appealed, challenging the denial of both motions to suppress. *See* Doc. 159; *United States v. O'Neill*, 94 F.4th 531, 536–37 (2024). On appeal, the Sixth Circuit determined Defendant's plea agreements "did not reserve the right to appeal the district court's ruling denying his motion to suppress the evidence found in the house" and only preserved his right to challenge

the motion to suppress the evidence found in the barn. *Id.* at 537 (addressing the residence warrant and resulting search). Rather, the court held Defendant could challenge only the *reasoning* of the district court's order addressing the residence warrant and search to the extent it was incorporated into the order denying the motion to suppress evidence found in the barn. *Id.* at 537. Thus, Defendant was foreclosed from challenging the district court's ruling with respect to the suppression of evidence obtained as a direct result of the execution of the residence warrant. *Id.*

The Sixth Circuit proceeded to focus its substantive Fourth Amendment analysis on Sergeant Barta's affidavit, the barn warrant, and the subsequent search of Defendant's barn, ultimately determining the district court "correctly applied the good-faith exception and properly denied O'Neill's motion to suppress" as "reliance on the warrant to search O'Neill's barn was objectively reasonable, and suppression of the fruits of the search would not serve the purposes of the exclusionary rule." *Id.* at 542. In reaching this conclusion, the court considered at least some of the reasoning included in the district court's order resolving Defendant's motion to suppress evidence obtained from the residence search. *See id.* at 539 ("The district court did not clearly err in . . . finding that neither Officer Brian nor Sergeant Barta had knowingly or recklessly included the reference to the peer-to-peer network in their affidavits."). Ultimately, the Sixth Circuit affirmed the district court's ruling on Defendant's motion to suppress evidence found in the barn, and, due to its waiver determination, did not directly review the district court's ruling denying suppression of the evidence found at Defendant's residence. *Id.* at 542.

Defendant brought the present Motion pursuant to § 2255 asserting two grounds for relief. First, Defendant argues his plea, conviction, and sentence for both Counts 1 and 2 must be vacated due to the involuntary nature of his plea agreement governing each Count. (Doc. 176-1, at 13–17). Defendant's second ground alleges the Government breached his plea agreements by advocating

4

for an above-guidelines sentence at his sentencing hearing. *See id.* at 18–21; Doc. 181, at 5 (explaining "the only appropriate remedy would be to vacate the sentence and allow [Defendant] to be sentenced anew under a new Judge"). Neither party requested an evidentiary hearing. The Court will consider each of Defendant's grounds in turn.

## STANDARD OF REVIEW

To obtain relief under § 2255, a Defendant presently in the custody of the United States must demonstrate their sentence was "imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185–86 (1979)).

If the error established is one of constitutional magnitude, the defendant must establish such error "had a substantial and injurious effect or influence on the proceedings" in order to obtain relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). For a non-constitutional error, the defendant must establish a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of the "rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994) (citation omitted).

**DISCUSSION**

Defendant's First Ground (Voluntariness)

Defendant first argues he is entitled to relief because his decision to enter into each separate plea agreement did not constitute a "knowing and voluntary" act. (Doc. 176-1, at 13 (first citing *Brady v. United States*, 397 U.S. 742, 749, 755 (1970); and then citing *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000))). Defendant argues his second plea agreement, which governed the receipt Count, was intended by both him and the Government to preserve his right to appeal the district court's ruling on his motion to suppress evidence obtained by execution of the residence warrant. *Id.* at 15–16. The Government, after it "went through old archived emails between the parties after [the present] § 2255 motion was filed," confirmed the parties had intended to preserve Defendant's ability to appeal the district court's ruling on his motion to suppress evidence obtained in connection with the residence warrant and search. (Doc. 179, at 15). As determined by the Sixth Circuit, however, Defendant in fact failed to preserve such a challenge despite the parties' intent to the contrary. *See O'Neill*, 94 F.4th at 537.

Based on the dichotomy between the parties' intent and the Sixth Circuit's ruling as to waiver, the Government partially concedes error. Specifically, it concedes the failure to "preserve the suppression issues at the residence" despite the parties' intent to do so, combined with the mutual misunderstanding as to the effect of the language included in the second plea agreement, "renders the guilty plea to the [r]eceipt [C]ount—and that [C]ount alone—invalid." (Doc. 179, at 15). The Government's concession necessitates vacating Defendant's guilty plea, conviction, and sentence as to Count 2. *See United States v. Deller*, 2024 WL 3540390, at *5 (S.D. Ohio) (explaining that, where a plea agreement is held invalid under similar circumstances, the proper remedy is to allow the defendant to "withdraw his plea" and "return[] the parties to the negotiating

table"); *United States v. Bernard*, 373 F.3d 339, 345 n.7 (3rd Cir. 2004) ("If the provisions of a plea agreement are accepted by a court, but later found to be invalid, the proper remedy is . . . to allow the defendant to withdraw the guilty plea and either negotiate a new agreement, or proceed to trial."); *United States v. Brooks*, 78 F.4th 138, 144 (5th Cir. 2023) (explaining that, if a defendant wishes to challenge the validity of a particular provision of his plea agreement "he must do so through a § 2255 motion challenging the entire guilty plea. The result, if successful, would be for *all* parties to start over"). Defendant wishes to go further, however.

On Defendant's account, vacatur of the plea agreement governing Count 2, the receipt Count, alone is an insufficient remedy. (Doc. 176-1, at 16–17). Rather, because the residence warrant was, chronologically, the first warrant to be executed in this case, Defendant contends the failure to preserve his challenge to the legality of the search of his residence (and his person) prevented him from arguing the evidence obtained from the subsequent search of his barn was similarly subject to suppression. Defendant argues: "Therefore, the probable cause that formed a basis for the [barn] warrant, and the first Count of conviction, were fruits of the [residence] warrant. If the [residence] warrant was invalid, they were the fruits of the poisonous tree." *Id.* at 17. Inadvertently waiving his ability to challenge the legality of the evidence from his residence thus deprived Defendant "of a full and meaningful review of the [barn] warrant." *Id.*; *see also* Doc. 181, at 4 ("Because the two [C]ounts are inextricably linked, only an appellate review of both warrants together would render a complete and just disposition."). To achieve a full and renewed review of the barn warrant on appeal, Defendant seeks vacatur of his plea agreement governing Count 1, the production Count, which preserved only his right to challenge the district court's ruling with respect to the barn warrant and search. The Government maintains the conceded error necessitates vacating Defendant's guilty plea, conviction, and sentence on Count 2 alone. The

Court agrees with the Government. Accordingly, it vacates Defendant's plea agreement and conviction with respect to Count 2, the receipt Count, only.

For a plea agreement to comport with the requirements of fundamental due process, it must be entered into voluntarily and with knowledge of its effects on the defendant's rights and liberty interests. *Mabry v. Johnson*, 467 U.S. 504, 508–509 (1984). While the post-hoc breach of an otherwise valid plea agreement does not render it retroactively involuntary, *see Puckett v. United States*, 556 U.S. 129, 136–138 & n.1 (2009), where "the defendant was not fairly apprised of" the consequences of his plea agreement may it "be challenged under the Due Process Clause," *Mabry*, 467 U.S. at 509 (citing *Santobello v. New York*, 404 U.S. 257 (1971)); *see also Brady*, 397 U.S. at 755 (explaining a guilty plea entered into "by one fully aware of the direct consequences" of that plea will be deemed valid unless induced by threats, misrepresentation, or other improper promises such as bribes).

Defendant fails to establish he was not fully apprised of the direct consequences of his first plea agreement, which governed Count 1, the production Count. A "direct consequence" as distinguished from a collateral consequence is typically one that flows definitely, immediately, and automatically from the plea. *See King v. Dutton*, 17 F.3d 151, 154–55 (6th Cir. 1994) (citing, *inter alia*, *United States v. Campusano*, 947 F.2d 1, 5 (1st Cir. 1991) ("The distinction turns on whether the consequence represents a definite, immediate, and largely automatic effect on the range of a defendant's punishment.") (citation modified)). The list of relevant "direct consequences" also includes the "actual value of any commitments made to [the defendant] by the court, prosecutor, or his own counsel." *Brady*, 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc)).

8

At his first change of plea hearing, the Government described the conditional plea language of the first plea agreement, which preserved Defendant's limited appellate rights, by stating "this plea is conditional and the [D]efendant gets the preservation of his right to appeal the denial of his motion to suppress, that being Document No. 63." (Doc. 169, at 29). Thus, while Defendant could directly challenge the Court's ruling on this motion to suppress evidence obtained as a result of the search of his barn, *see* Doc. 79, he could only appeal prior findings and orders "with regard to" the ruling on the motion to suppress evidence obtained in the barn and "incorporate[d] by reference" therein. (Doc. 169, at 29). This description accurately reflects the language of the plea agreement and the conclusion reached by the Sixth Circuit regarding the scope of Defendant's appellate waiver. *See* Doc. 138, at 4–5; *O'Neill*, 94 F.4th at 537 ("O'Neill may contest the reasoning contained in the order denying his motion to suppress evidence found in the house only to the extent that it was incorporated into and relied upon in the barn ruling.").

Such a result makes sense, as only evidence obtained in the barn formed the factual basis for the production Count to which Defendant pleaded guilty as part of this first plea agreement. *See* Doc. 138, at 8–9 (describing the factual basis for the guilty plea, which contains descriptions of evidence found only in Defendant's barn). Thus, in pleading guilty to the production Count, there would be little reason for Defendant to need to preserve the ability to challenge the district court's *ruling* as to the admissibility of the evidence found in the residence—evidence that did not impact the factual basis for the production Count. Rather, the ruling on the residence search would be relevant to the motion to suppress evidence obtained from the barn and, subsequently, the production Count, only "to the extent said rulings were relied upon in the ruling denying" the motion to suppress evidence obtained in the barn. *Id.* at 4–5. This is the precise conclusion reached by the Sixth Circuit on direct appeal regarding the scope of the waiver language included in

9

Defendant's plea agreements. *See O'Neill*, 94 F.4th at 537. This understanding of the provision would have allowed Defendant to preserve any argument that the barn evidence was fruit of the poisonous tree, as any determination to the contrary by the district court would necessarily rely on its determination that the residence evidence was not subject to suppression. Thus, regardless of the details of the parties' communications, there is insufficient reason to believe Defendant was not apprised of the actual, direct consequences of his first guilty plea in light of the Sixth Circuit's ruling on direct appeal, as that agreement adequately preserved the argument he now claims requires vacatur of the production Count plea and conviction.[2]

To see why, consider the upshot of accepting Defendant's argument here. Again, Defendant claims the fact that his first plea agreement, which governed the production Count, did not preserve the right to challenge the ruling denying his motion to suppress evidence obtained in his residence renders that plea agreement involuntary. He maintains this position even though the factual basis for the production Count did not rely on, or even mention, any evidence obtained in the residence. Further, Defendant did not plead guilty to the receipt Count, which was based on evidence obtained in the residence, until over eight months after he pleaded guilty to the production Count. Thus, Defendant's position would require this Court to conclude: (1) the parties intended to allow Defendant, in the agreement governing the production Count, to preserve a challenge to the final

---

2. This analysis would not apply to Defendant's plea agreement with respect to the receipt Count, as evidence obtained from the residence warrant and subsequent search formed the factual basis for that Count. *See* Doc. 150, at 8. Thus, as it relates to Count 2, the receipt Count, Defendant would require the ability to challenge the district court's ruling on his motion to suppress evidence obtained from the residence search, not just the reasoning contained therein, in order to maintain an effective avenue to challenge his conviction. Failing to apprise Defendant of the fact that the conditional plea provision governing his guilty plea to the receipt Count did not allow him to challenge the final disposition of the district court with respect to the motion to suppress evidence obtained during the residence search, therefore, would clearly constitute a lack of knowledge of the relevant "direct consequences" of his plea. *Brady*, 397 U.S. at 755.

ruling of the district court with respect to evidence entirely unrelated to the factual basis of that Count, and (2) because the agreement did not do so, and the Court, the Government, and his counsel did not notify him of this fact, Defendant was not properly apprised of the direct consequences of his first plea agreement thus rendering it involuntary. This Court will not stretch so far as to conclude a defendant, for his plea to be constitutionally voluntary, must be notified his plea agreement does not allow him to challenge the legality of evidence entirely unrelated to the Count to which he pleads guilty.

Nor would vacating Defendant's guilty plea, conviction, and sentence to Count 1 for a lack of voluntariness provide him with the relief he claims to seek. Again, Defendant's asserted basis for claiming his first plea was involuntary is that the failure to preserve his challenge to the Court's ruling on the suppression of evidence obtained in the residence "deprived him of a full and meaningful review of the second warrant" and, as a result, the evidence obtained in the barn. (Doc. 176-1, at 17). If the residence search violated the Fourth Amendment, and the evidence obtained therefrom was thus subject to suppression, Defendant argues Sergeant Bart's affidavit, the resulting barn warrant, and evidence obtained from execution of that warrant were all tainted by the initial illegal search and thus constitute fruit of the poisonous tree. (Doc. 176-1, at 17; Doc. 181, at 4). Not so.

"The 'fruit of the poisonous tree' doctrine . . . bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *United States v. Arrington*, 440 F. Supp. 3d 719, 730 (E.D. Mich. 2020) (quoting *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008)). Generally, the doctrine will mandate the suppression of evidence obtained as a result of a prior constitutional violation unless such violation "has become so attenuated or has been interrupted by some intervening circumstances so as to remove the 'taint' imposed upon the

11

evidence by the original illegality." *Id.* (quoting *United States v. Crews*, 445 U.S. 463, 471 (1980)). Nor will courts suppress "evidence that would have been discovered even without the unconstitutional source" or evidence acquired "from a separate, independent source." *Utah v. Strieff*, 579 U.S. 232, 238 (2016).

Even where none of these three direct exceptions to the doctrine apply, the "good faith" exception to the exclusionary rule continues to operate with force. *See United States v. McClain*, 444 F.3d 556, 564–566 (6th Cir. 2005) (citing, *inter alia*, *United States v. Leon*, 468 U.S. 897, 919 (1984)). The "good faith" exception maintains the exclusionary rule does not apply to "evidence obtained by an officer who conducts a search in reasonable reliance on a search warrant that was issued by a neutral and detached magistrate, but is ultimately found to be unsupported by probable cause or otherwise defective." *Id.* (citing *Leon*, 468 U.S. at 918).

In *McClain*, officers initially conducted a warrantless search of a residence after speculating it was in the process of being robbed. *Id.* at 560. While inside the home, officers viewed equipment necessary to run a marijuana grow operation, though none of the officers "saw any marijuana in the house or observed any illegal activity." *Id.* After these observations, officers placed the residence under surveillance and ultimately determined the residence housed a marijuana grow operation. *Id.* Officers obtained a search warrant for the residence. *Id.* The affidavit supporting such warrant "explicitly relied in part on evidence obtained during the initial warrantless search" of the residence. The Sixth Circuit determined this initial warrantless search violated the defendant's Fourth Amendment rights, meaning the affidavit and warrant on which the officers relied to conduct the second search of the residence were themselves fruit of the poisonous tree. *Id.* at 565.

12

In such a scenario, the *McClain* court determined the good faith exception should nonetheless apply where the "facts surrounding the initial Fourth Amendment violation were 'close enough to the line of validity to make the officer's belief in the validity of the [subsequent] warrant objectively reasonable.'" *Id.* at 566 (quoting *United States v. White*, 890 F.2d 1413, 1419 (8th Cir. 1989)). Thus, even where the initial search of the residence violated the Fourth Amendment, and the subsequent search warrant relied on evidence obtained as a result of that unlawful search, where "the officers who sought and executed the search warrant[] acted with good faith" the exception to the exclusionary rule applies. *Id.*

On direct appeal in this case, the Sixth Circuit determined the search of Defendant's barn was subject to the good faith exception under *Leon*. *See O'Neill*, 94 F.4th at 542. Barta's affidavit relied at least in part on evidence obtained from the residence search, including "an immense collection of images . . . of nude or partially nude young boys" found on Defendant's devices. *Id.* at 541. Sergeant Barta's affidavit went further, however, describing items O'Neill's son observed in the barn such as "'a computer tower with monitor, computer discs, blank and used discs, vibrators and other sex toys, condoms, and children's clothing and "costumes,"' as well as 'approximately fifteen firearms.'" *Id.* Taken together, these allegations left the Sixth Circuit with "no doubt that Sergeant Barta's affidavit contained enough factual material to support a good-faith belief that probable cause existed." *Id.* (quoting Doc. 68-1, at 2). The question is thus whether, even if Defendant, on a second direct appeal following vacatur of his plea agreement governing the receipt Count, overturns the district court's ruling and successfully secures suppression of the evidence obtained from the <u>residence</u> search, there would be grounds to disturb the Sixth Circuit's prior ruling as to the <u>barn</u> search. The answer is no.

13

For the good faith inquiry under *Leon* and *McClain*, it matters not whether Defendant is ultimately successful in arguing the fruits of the residence search, despite being supported by a search warrant, must be suppressed. The ultimate question remains whether, *at the time the officers searched the barn*, they acted in objectively reasonable reliance on the barn warrant. *Cf. United States v. Schuttpelz*, 467 F. App'x 349, 353 (6th Cir. 2012) (explaining the applicability of the exclusionary rule turns on whether officers acted in objectively reasonable reliance on the law as it existed at the time of the challenged arrest). Here, much like in *McClain*, the "facts surrounding the initial" residence search, were "close enough to the line of validity" such that Sergeant Barta's decision to include the fruits of the search in a subsequent affidavit, as well as the officer's reliance on the barn warrant stemming from that affidavit, was objectively reasonable. *See McClain*, 444 F.3d at 565–66. The residence search was supported by a facially valid warrant which lacked for probable cause chiefly due to the "judge's, not the affiant's, unawareness" of the relevant probable cause standard. (Doc. 78, at 10–11 (discussing *New York v. Ferber*, 458 U.S. 747 (1982) and its holding that mere nudity is itself insufficient to support probable cause in this context)).

Defendant offers no explanation for how a post-hoc ruling in his favor on the legality of the residence search would impact the objective reasonability of the officers' reliance on the barn warrant at the time of the barn search. It is particularly difficult to imagine how it might in light of the Sixth Circuit's clarification on initial direct appeal that, while Defendant may have waived his right to challenge the *outcome* of the district court's ruling on the motion to suppress the residence evidence, the court was free to consider the facts and reasoning of the residence ruling to the extent relied on in the district court's ruling on the legality of the barn search. *O'Neill*, 94 F.4th at 537. That is, revisiting on collateral review the legal question of whether the residence search fell within *Leon*'s good faith exception would have had little to no bearing on the *O'Neill* court's *Leon* analysis

14

with respect to the barn search, as the *O'Neill* court was already free to consider the facts and reasoning surrounding the prior residence search, including whether such search was "sufficiently close to the line of validity" for further reliance on its fruits in Sergeant Barta's affidavit to be objectively reasonable. *McClain*, 444 F.3d at 565 (quoting *Fletcher*, 91 F.3d at 52).

Thus, any error with respect to the voluntariness of the first plea agreement's conditional waiver provision did not create "a substantial and injurious effect or influence on the proceedings," as Defendant, in effect, received a full review of the validity of the search of his barn on direct appeal. *Watson*, 165 F.3d at 488 (citing *Brecht*, 507 U.S. at 637–38). Even if Defendant were to successfully challenge on appeal the ruling as to the residence evidence following vacatur of his plea agreement for the receipt Count, the Court finds there would be no sufficient grounds on which to disturb the Sixth Circuit's determination that the subsequent barn search was conducted in good faith under *Leon*. The evidence obtained from that search would therefore not be subject to exclusion, and the factual basis for Defendant's plea and conviction as to Count 1, the production Count, would remain undisturbed. Thus, Defendant's first ground necessitates vacating his sentence, conviction, and guilty plea as to Count 2, the receipt Count, only.

Defendant's Second Ground (Breach)

In his second and final ground for relief, Defendant asserts the Government breached his plea agreements by advocating for an upward departure from the applicable guidelines range at Defendant's sentencing hearing. (Doc. 176, at 5; Doc. 176-1, at 18–21). Because the Court finds Defendant's second plea agreement, along with the conviction and sentence associated with Count 2, must be vacated as a result of the Government's concession of error, only Defendant's first plea agreement remains in dispute. This first agreement, however, directly contemplated the events Defendant now protests. *See* Doc. 138, at 6 ("[T]he parties understand and agree that there is no

15

agreement as to the ultimate sentence or prison term, other than the agreement to recommend concurrent prison terms on Count One and Count Two. The parties also understand and agree that each side may advocate for the prison term that it feels is appropriate, subject to the statutory mandatory minimum and maximum, *even if doing so involves a sentence outside of the Sentencing Guideline range as calculated in paragraph 19 and even if doing so involves a variance or departure.*") (emphasis added).

At his first change of plea hearing, the Government made clear the plea agreement would allow each party, not just the Government, to advocate at sentencing for a term of imprisonment "it feels is appropriate . . . even if doing so involves a sentence outside of the sentencing guideline range." (Doc. 169, at 31). The Court asked Defendant whether the Government's account of the plea agreement's contents comported with his own understanding of the parties' agreement. *Id.* at 46. Defendant, under oath, replied in the affirmative. *Id.* The Court further clarified Defendant was not guaranteed to receive a sentence within a certain guidelines range, and that, while a sentence more severe than expected may "be a basis under certain circumstances to take an appeal if it's outside the guideline calculation or above the statutory maximum . . . it will never be a basis to come back and withdraw your guilty plea." *Id.* at 47. Again, Defendant stated he understood. *Id.*

Defendant's appeal to other portions of his plea agreement indicating the Government reserved merely the right to "speak" at sentencing is unpersuasive. (Doc. 176-1, at 20). In effect, Defendant argues the parties' agreement to a particular offense level calculation, guideline range, and that "no other sentencing factors would apply" means there was "nothing in the plea agreement that would lead a reasonable Defendant to believe that he had stipulated to a guideline provision" that had no bearing on his ultimate sentence. *Id.* To accept this argument, however, would be to place Defendant's present explanation of his personal interpretation of his plea agreement in

16

conflict with his sworn testimony stating he understood the Government could advocate for a sentence it felt appropriate, including one outside the guidelines range. (Doc. 169, at 31). Doing so, in turn, would violate the strong presumption of verity to which "[s]olemn declarations in open court" are entitled. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The Court thus finds Defendant "is bound by his statements in response to [the] court's inquiry," *Baker v. United States*, 781 F.2d 85, 90 (1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696–97), and cannot complain of breach where the Government followed the precise letter of the plea agreements.

Remedy

As explained above, the Government concedes error as to the voluntariness of Defendant's second plea agreement, which governed his guilty plea to Count 2, the receipt Count. Where a plea agreement is defective, the proper remedy is to void the agreement and send the parties back to the negotiating table. Accordingly, the Court vacates its acceptance of Defendant's plea agreement, as well as his sentence and conviction as to Count 2 of the indictment. The Court need not vacate its acceptance of Defendant's plea agreement and its judgment of conviction as to Count 1. The Court finds Defendant has failed to show his first plea agreement fails for a lack of knowledge or voluntariness. Even if he could, any such error did not result in a substantial and injurious effect or influence on the proceedings sufficient to warrant relief under § 2255.

Nevertheless, the Court finds it proper to vacate Defendant's sentence as to both Counts 1 and 2. The Court sentenced Defendant to 192 months as to Count 1 and Count 2, to be served concurrently with one another. (Doc. 155, at 2). The Court imposed the same sentence on each Count of conviction despite the receipt Count carrying with it a higher total offense level under the parties' agreement than did the production Count. *Compare* Doc. 138, at 7; *with* Doc. 150, at 6. Further, the Court explained at sentencing it had decided to "vary[] upward from the calculation

17

. . in the plea agreements" and impose a sentence carrying a "total of 192 months" imprisonment. (Doc. 164, at 43). Such explanation indicates the two separate sentences formed a single "disposition in which the sentences on the various counts form part of an overall plan" or "sentencing package." *United States v. Mainville*, 9 F. App'x 431, 436 (6th Cir. 2001) (quoting *United States v. Townsend*, 178 F,3d 558, 567 (D.C. Cir. 1999)). Under this sentencing package doctrine, where one or more counts of conviction are vacated following a successful § 2255 motion, the court may "reevaluate the entire aggregate sentence." *Pasquarille v. United States*, 130 F.3d 1220, 1222 (6th Cir. 1997). Thus, the Court will vacate Defendant's sentence as to both Counts 1 and 2 and will resentence Defendant following a final resolution by trial or plea on Count 2.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion to Vacate be, and the same hereby is, GRANTED IN PART AND DENIED IN PART; and it is

FURTHER ORDERED that Defendant shall be returned to pretrial status as to Count 2 of the Indictment and post-conviction/pre-sentence status as to Count 1 of the Indictment, with counsel to be appointed.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: January 29, 2026